Good morning, your honors. My name is Francis Carey. I represent the Central States Health and Welfare Fund. Central States is an ERISA regulated welfare benefit plan. And as such, it's mandated to have an administrative appeals procedure to deny benefit plans. This case focuses on the administrative appeals procedure because a district judge found that it was significantly flawed. The district judge found that during the review procedure of a denied benefit claim for Mrs. Garner's hospital treatment on February 5th, 2019 at Coe Memorial Hospital in North Carolina, that during the review procedure when Central States provided documents received from the hospital during the appeals procedure to an independent medical reviewer, Dr. Serafini, the district court found that Dr. Serafini's opinion, although he gave reasons for recommending that the surgery was not medically necessary, Dr. Serafini's opinion stated that the records received did not contain the official MRI and medical records of the treating physician. Although Dr. Serafini gave other reasons why it should not be medically necessary, that there was no conservative treatment and no documentation as to the severity of the symptoms. Nonetheless, he said that he didn't get this MRI. If you followed it through, there's a two-step review process. The first review process is by the appeals committee, which is a staff review committee. And that actually occurred on August 14th, 2019, before it went to the trustees in the final step of the review. The trustees reviewed the case in January. But because the district court saw that Dr. Serafini said he did not get this MRI, the district court found that she had serious questions about Central States' motives in the case. She said that the fact that Dr. Serafini, the first reviewer, did not get this MRI, that his opinion was based almost entirely on the misapprehension that those documents did not exist. And hence, the process was flawed. And hence, Dr. Serafini's opinion was actually flawed itself. Well, how does Dr. Ward's IMR cure the defects of Dr. Serafini's IMR if the trustees repeatedly said they relied on two IMRs? Your Honor, the way it cures it, I think, is in two ways, to answer your question. The first way is that on July 30th, as Central States was preparing the appeal, they had two submissions from the hospital. They had the records of the hospital sent on the 13th of March. They had another submission by the hospital after Serafini's decision, and Central States denied the claim. So Central States reviewed this, getting it ready for the appeals, the first level of the appeal. I'm getting to your question. I'm sorry. I'm going kind of the wrong way. But Central States said, we got these new records. Send them out to a second IMR to see now if there's enough to determine if the surgery is medically necessary. Now, the district court conceded that the second IMR, Dr. Ward, had all the relevant records. In fact, the district court stated that there's nothing in the records to indicate that the trustees only relied upon Dr. Ward, who had full access to medical records. So what I'm saying, Your Honors, is that there was Dr. Serafini's opinion there. I'm saying that it's reasonable to consider that it was cured by Dr. Ward's opinion because Dr. Ward had everything. Now, there's no doubt that he had everything, the MRIs and everything else. And I'd also say, Your Honor, in response to your opinion, that there was very little reliance on Serafini because when you look at the denial levels, the first step of the appeals process and the second step of the appeals process from the review committee and the trustees, both of the denial letters only mentioned Dr. Ward's opinion. And as a matter of fact, when you look at the district court concluded otherwise, it concluded that there was a continued reliance on Dr. Serafini's opinion in the final decision. Why was the district court wrong on that? Well, I think the district court was wrong, Your Honor, because the district court said, quote, any reliance upon Dr. Serafini resulted in abuse of discretion by the trustees. And when I read your opinion in Booth versus Walmart, I think that's a wrong analysis by the district court, because as Your Honors will recall, in the Booth case, there was a flaw in the administrative review. There was a lady who had the heart problems and Walmart was denying the claims because it was beyond an exclusionary period. And when it got to the district court, the district court saw that there was a flaw. The district court saw that the administrator said that hypertension is a heart problem. Well, it really wasn't. But the district court in Wilkins said that, all right, although there is this possible flaw, there's other records in the. Well, let me say at any time during this process, did you provide the MRI to Dr. Serafini? No, Your Honor. The question is that doesn't look good, you see. And the question I have is why didn't you provide the MRI to Dr. Serafini at some point during this process? Well, the answer to that, Your Honor, I believe is that because central states ordered the second review from Dr. Ward, and they actually went up a step. Keep in mind that Serafini was board certified as a general surgeon. And the central states records show that when, on July 30th, when they wanted to send the documents to Dr. Ward, they moved up a step. He was a board certified neurological surgery. So I think at this point Serafini said what he said, but now you have Dr. Ward who had all the records clearly, and that he gave the opinion that it was not medically necessary. I think, Your Honor, that in my mind, reviewing all the documents in this case, is that a basic problem is that the district court seemed to find that central states had some type of a motive not to provide all the documents to Dr. Ward. But central states, I stress, it's not an insurance company. Central states has no stockholders. It's tax qualified by the Internal Revenue Service. The trustees have no profit motive in approving or denying claims. There's authority in cases I cited in the briefs. So it seems to me surprising that the district court would think that central states want to not provide or negligibly. But the MRI was in your possession the whole time. Well, yeah. Well, wait a minute. It was in your possession the whole time. And I don't understand why it wasn't provided to Dr. Serafini at the outset, and then also why it wasn't provided to him later on. I mean, here you have an important piece of medical evidence. Everyone would know that the MRI would bear significantly on whether surgery was medically necessary. To use the term of the plan, you have that in your possession. And I'm just wondering why it never was given to Dr. Serafini. And what the question in my mind is, the reason it was not given to Dr. Serafini was because it probably would have shown that the surgery was medically necessary, or you were afraid of that. The optics of this are not good. Well, Your Honor, I think that's what the district court thought, too. But I would say this. I'm not sure when that MRI came into central states. Just keep in mind that there were two submissions by Cone Hospital. There was a submission of records on March 19th, 2019, and Cone sent in the original appeal. Cone sent in a three-page appeal. It said it included records. After Cone's submission on the 19th, then it went to Serafini on April 3rd. Serafini said what he said. Then after Serafini gave his opinion, central states sent out an explanation of benefits denying the claims. After the explanation of benefits went out, then on April 26th, the hospital submitted a new submission of records. There is one document in the file, and opposing counsel is going to talk about it. There's one document in the file that when the case was going to the appeals committee on August the 14th, before it went to the appeals committee, there was a fact sheet prepared for the appeals committee that said documents received in April. It says April 2019, documents received, sent to IMR for review to determine medically necessary. So the MRI and office notes were received. The next sentence says there's a review by an MRI board certified in general surgery. That suggests Dr. Serafini. But I'd point out, Your Honor, that that says documents received in April. The second submission was April 26th. Serafini saw whatever documents came in on March 19th with the three-page appeal from the hospital. So I'm not certain, as a matter of fact, that that document, I don't accept that that document was necessarily in the first submission. And I'd also say, Your Honor, that if it was in the first submission, why on earth would Central States not provide it to Serafini? This is a $75,000 medical bill. Central States covers over 400,000 people throughout the United States for medical benefits. It's inconceivable to me that Central States would hold back a document from Dr. Serafini so that he would reach an opinion that this bill was paid. Mr. Terry, so let's put aside for the moment the issue of motive and take at face value that maybe the district court was a little too strident in suggesting that there was a bad motive in this case. But the fact remains that the record is the record. And the record in this case shows that you've got this initial evaluation by a doctor without the benefit of the MRI. And to your credit, you then send it to another doctor, the Dr. Ward. But in his separate report, he indicates that he realized that one of the documents that he reviewed was the flawed review of Dr. Serafini. So that's problem number one. You send both of those reports to the trustees. And then the trustees, in denying the claim, make it very clear that they're relying on the opinions of both the board-certified general surgeon and the independent board-certified neurological surgeon, both of whom suggested denial of the claim. I mean, that just seems very clear that given that flawed analysis and the fact that they relied on what your client effectively conceded was a defective initial report, that that suggests that this case just needs to go back because of the fact that the trustees relied on both the proper second report and the flawed first report. I think two things, Your Honor, if I may. First of all, when Central States sent the documents to Dr. Ward for the review, when you look at the e-mail chain, which is in the appendix, Central States said, here's new records from the hospital. Serafini said that he didn't receive the MRI. Now see if these new records is enough to determine that this surgery was medically necessary. So that doesn't sound to me like Central States was trying to set this up. No, no, I'm not suggesting that. But the fact remains that Dr. Ward relied on that initial report in some way, right? It's listed, yes. It's listed in his documents. He saw it. It was there. And so did the trustees. The trustees did, Your Honor. But I'd also point out that the trustees, they said that they reviewed all the facts in the records, including the reports by Ward and by Serafini. But then the trustees go on to say, in part, due to the absence of any evidence of abnormalities in the neurological exam and lack of documentation concerning treatment. Well, that's picking up what Dr. Ward said. And I'd stress that. Let me answer this. Let's suppose, for the reasons that my colleague Judge Diaz has expressed, that the error with respect to Dr. Serafini infected the whole process, including Dr. Ward's review. Is the district court here awarded benefits outright? Let's just assuming argument that we don't agree with you on the way that the process pulled out here. Are you advocating a return to the district court with instructions to return to the trustees? Or are you, is that what you're advocating? And why shouldn't, if we disagree with you, why shouldn't an award of benefits, as the district court did, be the result? Why, given the flawed process here, why would you, if you do, contend that a remand is the appropriate course? Your Honor, to address your question, I think that the district court's opinion in this case is wrong. And I suggest that it should be overturned because the district court misapplied the holding and boot. The district court said any reliance, any reliance on Serafini's opinion is in itself an abuse of discretion. Let's suppose we disagree with you and find that there was a significant reliance on Dr. Serafini's opinion. And that even Dr. Ward pointed to that as a reason for his view. So let's suppose that the process here was flawed and that the failure to provide Dr. Serafini was something that infected it throughout. And it's certainly your obligation to provide the medical, the MRI to the independent reviewer. Should the case go back to the board or should we award benefits and affirm the district court's award of benefits? Well, of course, Your Honor, I'm respectfully arguing that, taken as a whole, based upon the analysis in Booth, taken as a whole, there's enough evidence in this administrative record to determine that the trustees did not abuse their discretion by relying on Ward and that the district court should be reversed on that basis. If Your Honor believes that the case should go back to the trustees to consider new evidence. Of course, there's no new evidence. So I suppose go back to the trustees, get a third independent medical reviewer and have him have the MRI. Your Honor's could order that, I suppose. Why should it go back to the trustees in light of the continuing failure to provide the MRI to Dr. Serafini and Dr. Ward? I realize normally under our cases, we remand things to the trustees. But we don't need to get into motive, as Judge Diaz points out, that probably we don't have the evidence really to reach a judgment on that. But I'm just wondering whether the trustees deserve another bite at the apple here in light of what the district court felt was a significant omission. Well, Your Honor, respectfully, I think that Dr. Ward had the MRI. He had everything. And the district court even, I think, suggested that the district court's opinion may have changed when she said that there's nothing in the record to show that they relied only on Ward. So that suggests to me that the district court was saying that Ward had all the documents, and his decision could have upheld the trustees' decision. So it would result in an opinion by this court that the trustees had a reasonable basis, that the review process was principled. All right. Thank you, sir. Thank you very much. If any of my colleagues has a question, I don't hear anyone say they have a question. So let's hear from the other side on this. Good morning, Your Honors. May it please the court?  I would like to point out to Your Honors that that is not the only way that the district court found that central states abused their discretion. There was also a failure to credit the conservative treatment that Ms. Garner did undergo prior to the surgery, which I'll get to in a second. Regarding Dr. Serafini's opinion, I respectfully submit that it's not just the MRI that was missing. There were medical records going back to 2017 that documented Ms. Garner's issues and the reason that she needed this surgery. To opposing counsel's point, there is a very clear document in the administrative record that says medical records received from 2017 to 2019, plus an MRI, sent to IMR, Board Certified in General Surgery, for review and opinion. There's only one doctor in the record that's Board Certified in General Surgery, and that's Dr. Serafini. So either central states did not send it to him or he failed to consider it. As Judge Diaz pointed out, neither goes to some kind of nefarious motive by central states to deny the claim. However, it does go to an indication of an abuse of discretion. Let's suppose we agree with you that the trustee's decision was flawed for some of the reasons that we've been over. Is the proper resolution of the case, in your view, to remand the trustees explaining our reservations and the need to provide a complete medical record for them to make their decision? Or is the proper resolution of this to do as the district court did, to award the award benefits outright? Which do you say? The appropriate remedy in this case, Your Honor, is to award benefits outright. And the reason is... But isn't there a presumption that things go back to the trustees when there's a flawed process? Not in this case, Your Honor. Simply because, as opposing counsel pointed out, there are no new documents. They had the documents. Either they failed to provide them to the doctor or the doctor just ignored them. There's a case out of the District of Maryland entitled Stewart v. Bell. And it states that in a case like this, remand would not be necessary because central states had adequate evidence to make their decision and still abuse their discretion in doing so. Therefore, we would submit that the appropriate remedy in this case would be an outright award of benefits. Further, unlike most ERISA cases, Your Honor... So, what you're saying is that the key question is whether the remand would result in the trustees having additional information that they didn't possess in the first go-round. No, Your Honor. I believe that remand would be inappropriate because they had all of the medical records. And unlike most ERISA cases, this particular plan has a two-step appeal process. So, in essence, central states had two bites at the apple to get it correct and still got it wrong. So, we would assert that remand would not be the appropriate remedy in this case, though an award of benefits would be. You talked about failure to credit conservative treatments. What were those treatments that she had prior to surgery? Yes, Your Honor. The treatments that Ms. Garner had prior to the surgery was a significant medication history of hydrocodone. As Your Honor is probably aware, it's a pretty strong narcotic medication. Additionally, her doctor had prescribed that she undergo certain exercises in an attempt to relieve her pain, none of which were successful. There's also documentation in the administrative record from her treating physician that he recommended surgery after, quote, months of conservative treatment or conservative attempts at conservative treatment with no success. Now, going to the failure to credit those, Dr. Serafini says she didn't have any conservative treatment. But as we know, he wasn't provided the full records. So, it's not surprising that his opinion would say that, which was in the district court's opinion. Dr. Ward's opinion says there's no conservative treatment other than medications. Again, that's not accurate. The administrative record says it's medications and exercises in months of conservative treatment, none of which were explored by central states prior to the denial of the claim. Additionally, regarding the conservative treatment, there is no requirement anywhere in the plan document that conservative treatment must be undergone by a claimant before this will be deemed medically necessary. The terms of the plan state that surgery will not be paid for if it's not medically necessary or within the standards of generally accepted medical care. It's not a precondition, but it surely is relevant, isn't it, to the inquiry of medical necessity. I agree with you. It's not a term of the plan, and there's nothing that says trying conservative treatment is essential if you want to prove medical necessity. So, I take your point about adding a term to the plan. But on the other hand, it's a perfectly relevant consideration. I mean, you don't want people to just jump into a surgery. If there are more conservative ways of addressing a problem. Certainly, Your Honor. But ERISA says that the trustees are, in essence, plan fiduciaries. And as plan fiduciaries, they are required to put claimants on notice of the requirements of the plan and what would be required of a plan participant before a certain surgery or any medical treatment would be deemed medically necessary. That is absolutely absent from the administrative record in this case. There is nothing in the record where Ms. Garner was told by central states, hey, we have this medical policy. If you want to have this surgery done, this is what you have to do before it's deemed medically necessary. So, how would any claimant, such as Ms. Garner, know what's required of her if it is not articulated to them by the plan? Counsel, can I ask a question? I want to make sure I understand what your argument is on the merits. Let's assume for the moment that the plan in this case had not ditched the first report from Dr. Serafini and not relied on it, had not sent it to Dr. Ward. You have Dr. Ward's opinion standing alone in front of the trustees and they denied benefits in this case. Is your argument that even on that alone that that was an abuse of discretion to deny benefits based on the records that we have available? Because Judge Eagles really didn't analyze the basis for why she awarded benefits. I guess the implication was that the argument was they've had enough time to deal with this and I'm going to award benefits. She didn't make a finding, I don't think, on the competent record evidence that it would have been an abuse of discretion for the trustees to deny benefits. But is that what you're arguing? That even on Dr. Ward's report alone and the records that this still would have been an abuse of discretion? Yes, Your Honor. If I'm remembering the district court's opinion correctly, she spoke about the reliance on Dr. Serafini's opinion and she stated that that in and of itself would constitute an abuse of discretion. But then she goes on to say that the abuse of discretion is confirmed by the fact that the term medical necessity is undefined in the plan and by the plan's failure to recognize the non-surgical efforts undertaken by Ms. Garner and her doctors before surgery was scheduled. So even if conservative treatment was a requirement of the plan, Dr. Ward did not fully credit the conservative treatment that she did undergo. All he mentioned was a brief statement about the medications that she underwent but didn't give any other credit to any other conservative treatment that she had undergone which was documented in the medical records that were submitted to him for review. But, Your Honor, the continued reliance on Dr. Serafini's opinion alone is enough to constitute an abuse of discretion. The reason I ask that, that's kind of like a procedural error, right? It doesn't go to the merits of the claim itself. And if that were the only issue, as Judge Wilkinson has pointed out, I think suggested, we typically would send the case back because of that kind of an error. But your argument is that even setting that aside, Judge Eagles apparently made a determination that the competent evidence in this case suggests an abuse of discretion and denying benefits. Yes, Your Honor. It's a multi-leveled analysis of an abuse of discretion. It's not, as Your Honors know, everything is, when you're dealing with an abuse of discretion, there's a little bit of a tick mark system. Not only, it could be one thing or it could be a combination of things. In this case, we have a combination of things, the most glaring of which is the continued reliance on Dr. Serafini's opinion. Central states cannot cure a deficiency in the reliance. But I think Judge Diaz is asking, we all understand the point about Dr. Serafini. But I think Judge Diaz is asking, well, what, in addition to that particular problem, made this an abuse of discretion? The failure to adequately credit the conservative treatment that she did undergo, Your Honor. Anything else? What was Ms. Garner's neurological abnormalities? So there were several that were noted throughout the medical records. And obviously, I'm not a physician, so I had to go through and try to figure it out. There was documentation of headaches, numbness, visual distortion, right arm pain, abnormal sensations in her arm and hand. And there was a neurological review done the day that she had the surgery, if I'm remembering correctly, Your Honor. And it was positive for tingling, sensory change, and focal weakness, none of which were credited by either one of Central State's reviewing physicians. As a matter of fact, they both said that there were no neurological abnormalities, which, based on the records that I've reviewed from the administrative record, is not the case. Is there anything further that you have to add? I think we know from your briefs and those of your opponent what your position is. I'll ask my colleagues if they have further questions. Judge Diaz, do you have any further questions? I don't. Thank you. Judge Floyd? No, sir. All right. Thank you very much. Thank you, Your Honor. If you have a, counsel, if you have a critical point that you wanted to make in conclusion, we'd be happy to hear it. But I think we understand what your position is. Did you have a brief concluding statement that you wish to make? I don't want to cut you off. I'm sorry. I think he's referring to Ms. Lousery. Oh, I apologize, Your Honor. Only just to reiterate that we would request an affirmation of the district court's opinion. Again, with the two levels of appeal, we do not think that remand would be an adequate remedy because they had all of the information before them. A remand is not going to provide any new information to them that they didn't already possess since the surgery was in February of 2019. All right. Thank you very much. I just didn't want to cut you off too abruptly. Thank you. Thank you, Your Honor. All right. Mr. Carey, you have some rebuttal time. If it pleases the court, Your Honor, I think I would just address two points. Judge Diaz earlier asked if there was anything other than the district court's finding that Serafini's opinion was flawed. That led the district court to analyze this case and find that the trustees abused their discretion. And I think in my view, that's a key point in this case. It's because the district court, once she found that Dr. Serafini's opinion was flawed, the district court, in effect, stopped any review. Didn't want to consider anything else because the district court, I think as counsel stated a moment ago, said that, quote, any reliance upon Dr. Serafini is in itself abusive discretion. And the district court went on to talk about some other things. Counsel mentioned conservative treatment. I don't think I respectfully disagree with counsel. I don't think there is any evidence of any significant conservative treatment in this case. Keep in mind that this lady, the surgery that she had on November 5th was cervical surgery to address a specific problem at C3, C4, and C6 and C7. She had other medical problems. She had back aches. She's seen this doctor for a long time. She saw the doctor. Going back, she had par surgery. She saw the doctor in 2017 for aneurysm. But for the conservative treatment referenced prior to this surgery, prior to the cervical surgery, was posterior exercises. And keep in mind the surgery took place on February 5th, 2019. In September 20th of 2019, she saw Dr. Elsner, her physician and her surgeon, not long before the surgery was performed. She complained about pain. So he said try some posterior exercises. That's yoga exercises. That's all he told her to do. He said she had a prior prescription of hydrocodone, some rare doses of it back in 2017, and he said he renewed the prescription for hydrocodone. This is in September, shortly before the surgery. She went back to Dr. Elsner in January, the beginning of January of 2020, very shortly before the surgery. And she said she did the yoga exercises and she still felt bad. I think that that's a substantial, the only conservative treatment. There's no injections of the lady. And Dr. Elsner did not send her to a physical therapist where there's a record of what she did. The only physical therapy in this case you'll find is posterior exercises, which is yoga, which she said she did. She never said how much she did. Your opponent makes the point that in requiring conservative treatment in order to, as a precondition for something being medically necessary, that you're essentially adding a term to the plan, adding a precondition. It's not there in the plan. That was the point your opponent made. I think that Your Honor probably answered that question yourself. The plan says that they don't pay for medically necessary treatment. And I suggest the only way to find out if a treatment is medically necessary or not is you have to go to medical review, independent medical reviewers, and ask a doctor if it's medically necessary. It's not something you can lay out. I can't imagine that you could lay out hundreds of terms in a plan and say, this is good, this is bad. If it's bad, you can't do it. It makes a lot more sense to me, particularly when you're dealing with the processing claims. As you know, thousands of claims are processed. The way to do it, it seems to me, is to send this out so you get an opinion of a medical expert when you have to make a decision. The trustees are not doctors. They have to consider medical evidence to do that. I would say, Your Honor, that the district court, I don't know if it ever really substantially considered that the plaintiff had the burden proof in this case. The district court found Scalfini's decision was flawed, and the district court from that point found through the entire record that that followed through and kind of poisoned the review by the trustees. And I think that that's a problem in this case. And I think that what were the trustees supposed to do at this point? In July, they saw Scalfini didn't have it. What were they supposed to do other than send all the records out for a new review, which they did? And I think if Your Honors would affirm this decision, you'd be having a substantial departure from Booth, where that judge cut off the analysis in this case. All right. Thank you very much. Thank you. We appreciate it. I'd like to thank both counsel for their arguments. And again, we're sorry that we're not able to come back and come down and thank you personally and shake hands with you personally. But we appreciate your being here and for giving your arguments nonetheless. Thanks. Thanks to you both.
judges: J. Harvie Wilkinson III, Albert Diaz, Henry F. Floyd